## Campbell et al. v. Campbell et al.

(Decided December 3, 1929.)

J. SMITH HAYS and H. C. EVERSOLE for appellants.

C. W. HOGG and H. C. FAULKNER for appellees.

Opinion of the Court by Judge Logan—Affirming.

This is the second appeal in the same case. The former opinion is in 207 Ky. 17, 268 S. W. 588. The general facts in the case are stated in that opinion. The opinion, in that case, held that the petition filed by the heirs of Edward Campbell by his first wife against his widow and the children by her stated a good cause of action. The allegations of the petition, according to the opinion of the court, were sufficient to show that the Owsley county tract of land mentioned in the record was held in trust by Edward Campbell for the use and benefit of his children by his first wife. The petition alleged that he had sold the land and converted the proceeds to his own use. This court held that, if that fact should be established, his estate could be held responsible for the trust fund so converted. It was alleged that the proceeds of the sale of the Owsley county land, to wit, $2,825, was invested by Edward Campbell in the land which he afterwards conveyed to the children by his second wife, and this court held that, if that fact should be established, the children of Edward Campbell by his second wife could be held responsible for the amount of the trust fund invested in the land thereafter conveyed to them.

With these general principles established the cause was remanded to the circuit court for further proceedings.

For the sake of clearness we will state the facts which are the basis of the cause of action. In 1893 Edward Campbell and his then wife conveyed to their eight children land in Perry county for a good consideration. The names of the eight children were Hiram, John M., Susan, Garfield, Stephen, Henry C., Boyd, and Grace. The grantors reserved a life estate in the land.

In 1896 Edward Campbell and his wife instituted an action in the Perry circuit court seeking to have the deed reformed, or canceled, on the ground that there had been a mistake in its execution, and that it did not express the intention of the grantors in that they meant to vest the children only with a "conditional" title, reserving in the grantors the right to dispose of the land and reserving the standing timber. Edward Campbell testified fully sustaining the allegations of the petition. His contention was that he had reserved the timber, and that he had reserved the right to sell the land and reinvest the proceeds. He testified that it was his intention to sell the

land and reinvest the proceeds in other land. The attorney who prepared the deed also testified. Judgment was entered on September 21, 1896, canceling the deed. It is admitted by counsel for the appellants that the judgment is final, and that the discussion of any errors appearing in the proceedings would be futile.

On May 18, 1897, Edward Campbell sold the land mentioned in the record as the Perry county land to Robert C. Napier for $4,000, and simultaneously he conveyed to his eight children above named the Owsley county tract of land which he afterwards sold for $2,825. It is apparent from the record that the small tract of Owsley county land was purchased with the proceeds of the Perry county land. In the deed which he executed for the Owsley county land Edward Campbell reserved a life estate in the land and also the right and power to sell and convey it, should he so desire, and to reinvest the proceeds in other property.

The title to his property remained in his children until May 15, 1908, when, pursuant to the power retained in the deed, Edward Campbell conveyed the Owsley county land to T. C. Fuller. It is admitted that Edward Campbell was entitled to the use of the funds during his life. It appears that he sold the Owsley county land for the same price that he had paid for it.

Edward Campbell was the father of three children by his second wife, Joe G. Campbell, Estell Campbell, and Edward Campbell, Jr. His widow, Mattie M. Campbell, and her three children are appellees. Prior to his death Edward Campbell conveyed to his three children by his last wife a tract of land of considerable value. Two of his children by his first wife died before he did, to wit, Garfield Campbell, who left as his only heirs Nina Mae Campbell and Bonnie Campbell, and Susie Campbell McCollum who left as her only heirs at law Ruth McCollum and Mabel McCollum, who declined to join with appellants in this suit, and who are appellees in this action.

Edward Campbell died in June, 1921, leaving a will first directing that his just debts and funeral expenses be paid out of his estate, then making a few small bequests. The seventh clause of his will is in this language:

"Seventh: I will and bequeath nothing to my sons, Hiram Campbell, John M. Campbell, Garfield Campbell's children, Steven Campbell, Henry Campbell and Robert Campbell, and nothing to my daugh-

ter Susie McCollum's children and Grace Bicknell, they and each of them having received from me their equal shares in my estate.''

This suit was instituted on June 15, 1922, to recover of Edward Campbell's heirs and the etate in the hands of his children by his second wife $2,825, as a trust fund arising from the sale of the Owsley county land. A demurrer was sustained to the petition, and an appeal was taken to this court with the result above indicated. When the cause was returned to the Owsley circuit court an amended petition was filed seeking to recover the trust fund arising from the sale of the Perry county land, to wit, $4,000. The action as finally expressed in the petition and amended petition was to recover the $2,825 arising from the sale of the Owsley county land which was treated as a part of the proceeds of the sale of the Perry county land, and $1,175, the balance of the proceeds of the sale of the Perry county land. A demurrer was sustained to the amended petition, and the case was tried on the original petition and the answer thereto, with the result that the chancellor denied the claim of all of the children by the first wife except Hiram Campbell.

The answer, after a traverse, and in the second paragraph, alleged that Edward Campbell freely, and of his own will and accord, advanced to the appellants and the mother of Ruth McCollum Combs and Mabel McCollum sums of money largely more than their respective shares of the alleged trust funds, and largely more than their respective shares of the proceeds arising from the sale of the Owsley county land, and largely more than their respective shares in the whole trust fund. In a third paragraph it was alleged that Edward Campbell freely and voluntarily paid off and advanced to the children by his first wife all money arising from the sale of the tract of land, and advanced to them each out of his estate more than their respective shares of the proceeds of the sale of the land which had been placed in trust.

The main controversy on this appeal is whether the money advanced to his children by his first wife was intended as a satisfaction of the trust fund, or whether it was a gift, or donation, which should be charged against them as an advancement. It is contended by counsel for appellees that the proof established that the money advanced was intended to satisfy the claim of his children growing out of the trust fund; while it is contended by counsel for appellants that it was a gift, or donation, to

them, and that it had nothing to do with the trust fund, and did not satisfy the claim that the children had against their father for the proceeds of the sale of the land, which had been placed in trust for them. The question is a close one, and can be determined only from a consideration of all of the facts.

Taking up the claim of Hiram Campbell we find that his father stated in the deposition which he gave in the suit to cancel the deed that he had invested $800 for Hiram Campbell, and his evidence seems to indicate clearly that he considered that $800 a part of the fund which he had received, or expected to receive, from the sale of the Perry county land. It is true that Hiram Campbell testified that this money was received by him as a loan, and that he afterwards repaid it by services rendered to his father. He also has in his favor the fact that the deed to the Owsley county land was made to him and the other children of Edward Campbell by his first wife. If the interest of Hiram Campbell in the trust fund had been satisfied by the advancement of $800, it is difficult to explain why he was made one of the grantors in the deed to the Owsley county land. It is also established that Edward Campbell conveyed to John M. Campbell a lot and houses in Booneville worth about $1,000. This transaction appears to have taken place prior to the purchase of the Owsley county land. Edward Campbell gave to Stephen Campbell a house and lot in South Booneville worth $500 to $600. He sold the property for $750. It was established that Edward Campbell gave to Stephen Campbell an additional $100, and that he gave to John M. Campbell $500 on the purchase price of another house and lot in Booneville. Edward Campbell conveyed to the children of Garfield Campbell a house and lot in South Booneville, claimed by some of the witnesses to be worth $1,000, and by others to be worth about $500. He purchased a house and lot for Henry Campbell of about the value of $500. Without going through the record to point out exactly what he had given to each of his children, it is sufficient to say that he had given to the eight children mentioned in the deed to the Owsley county land more than was realized from the sale of it. Taking the record as a whole it would appear that he was attempting to give to each of them what he conceived to be their part of the trust fund, and that he was not confining himself to the funds realized from the sale of the Owsley county land alone. The favorite sum which he appears to have

given his children was $500 usually in property, and this would have absorbed exactly the amount that he received for the Perry county lands. In some instances he gave more. It is not seriously disputed, if disputed at all, that Edward Campbell gave to the children by his first wife money, or property, that in each instance amounted to $500 or more.

But it is argued by counsel for appellants that the establishment of the fact that he gave to his children money and property is not sufficient to show that he discharged, or attempted to discharge, the obligation to them growing out of his having created the trust fund. It is urged that payment involves more than the passing of money, or property, or its acceptance. It is true that the acceptance of money, or property, constitutes pay-ment of a debt only when it was intended as payment by the payor. Generally, something must be shown in addition to the mere passing of money or property from the payor to the payee. Galbraith v. Starks, 117 Ky. 915, 79 S. W. 1191, 25 Ky. Law Rep. 2090.

Counsel for appellants argue that, although it may be shown by the evidence that Edward Campbell gave property and money to his children, there is nothing to show that he intended that it should be in satisfaction of the obligation on his part to them to account for the trust funds arising from a sale of the property. We have taken notice of the fact that he was distributing among his children about $500 to each of them which would amount to exactly the sum that he recived from the sale of the Perry county land; that he stated, in his testimony, in the suit to cancel the deed that he had al-ready invested a part of the trust fund for his son, Hiram Campbell. It must be kept in mind that he reserved the right in the deed to the property to sell it and reinvest the funds arising in other property. Is it not reasonable to assume that it was his purpose to keep the property and fund together until he could invest it in property separately for his children?

Counsel for appellants rely on the case of Buckner's Adm'r v. Martin et al., 158 Ky. 522, 165 S. W. 656, L. R. A. 1915B, 1156. It was held in that case that, when a debtor owes his creditors an ordinary debt and gives to the creditors a money legacy, or property, that amounts in value to more than the debt, then the presumption, in the absence of any circumstances showing a contrary in-tention, will be that the legacy, or property, was intended

as a satisfaction of the debt; this presumption being allowed to give effect to what it may be reasonably supposed was the intention of the testator in making the gift. Although the court stated, in that case, that it was the general rule that a legacy, or property given in excess of the amount of the debt, would be presumed to be in satisfaction of the debt in the absence of circumstances showing a contrary intention, the court found that there were circumstances showing a contrary intention. If we may apply the same rule to facts such as exist in the case under consideration, we may well hold that Edward Campbell was attempting to satisfy the debts to his children by his first wife, as there is an absence of any circumstances showing a contrary intention. He stated, in his will, that he was leaving nothing to the children by his first wife because they, and each of them, had received from him their equal share in his estate.

He created the estate in the first place for the use and benefit of his children. He reserved the right to sell the property which he had placed in trust for them and to reinvest the proceeds. He purchased other property for his children—some before he sold the land, and some after he sold the land—but his entire conduct is convincing that he had created this estate for his children by his first wife, and that he was endeavoring to preserve it for them. Therefore, we are of the opinion that the general rule should prevail; that, as no contrary intention appears from the facts or circumstances, the money invested in property for his children, or paid to his children, was in satisfaction of their claims against him.

Judgment affirmed.

Whole court sitting.